```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA      *     Case No. 14-CR-00379(RRM)
                              *
                              *     Brooklyn, New York
                              *     July 23, 2014
     v.                       *
                              *
CECIL FRANKLIN SPEIGHT,       *
                              *
            Defendant.        *
                              *
* * * * * * * * * * * * * * * *

          TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
            BEFORE THE HONORABLE ROANNE MANN
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:         JACK DENNEHY, ESQ.
                            Asst. United States Attorney
                            United States Attorney's Office
                            271 Cadman Plaza East
                            Brooklyn, NY 11201-1820


For the Defendant:          ROBERT S. FRANKLIN, ESQ.
                            1 Exchange Plaza
                            New York, NY  10006
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 4:14 p.m.)

2              THE CLERK:  Criminal cause for pleading, docket no.

3    14-CR-379, *United States of America v Cecil Speight*.

4    Counsel, please state your appearance for the record.

5              MR. DENNEHY:  For the government, Jack Dennehy, D-

6    E-N-N-E-H-Y.  Good afternoon, Your Honor.

7              THE COURT:  Good afternoon.

8              MR. FRANKLIN:  On behalf of the defendant, Robert

9    Franklin, F-R-A-N-K-L-I-N.  Good afternoon, Your Honor.

10             THE COURT:  Good afternoon.  Welcome to all of you.

11   Please be seated and I'd ask you to remain seated during this

12   proceeding so you'll be closer to the microphones.

13             As I understand it, this is the -- the defendant's

14   initial appearance?

15             MR. DENNEHY:  Yes, Your Honor.

16             THE COURT:  And he self-surrendered today?

17             MR. DENNEHY:  Correct, Your Honor.

18             THE COURT:  I will get to the issue of bail towards

19   the end of the proceeding, but just so that I know now there

20   -- is there an agreed upon bond?

21             MR. DENNEHY:  There is, Your Honor.  Pending Your

22   Honor's approval.

23             THE COURT:  And this is an unsecured, un-cosigned

24   bond?

25             MR. DENNEHY:  Correct, Your Honor.

3

1      THE COURT:  And the government is satisfied that

2  this is sufficient to ensure the -- the plaintiff -- the

3  defendant's appearance in court?

4      MR. DENNEHY:  Yes, Your Honor.

5      THE COURT:  All right.  Mr. Speight, I have before

6  me a document entitled Order of Referral.  This order refers

7  the guilty plea proceeding to me to hear.  There is a consent

8  portion at the bottom.

9      Is that your signature on the defendant's signature

10  line?

11      THE DEFENDANT:  Yes, Your Honor.

12      THE COURT:  Have you read this document and

13  discussed it with your attorney?

14      THE DEFENDANT:  Yes, Your Honor.

15      THE COURT:  Do you understand what you've agreed to

16  by signing this document?

17      THE DEFENDANT:  Yes, Your Honor.

18      THE COURT:  I want to make sure that you do

19  understand.  This is Judge Mauskopf's case.  She's the United

20  States District Court Judge and she's the judge who will

21  sentence you and make the ultimate decision as to whether to

22  accept your guilty plea.

23      If you wish, you have the absolute right to have

24  Judge Mauskopf listen to your plea and if you choose to do

25  that, there'll be no prejudice or harm to you.  Do you

4

1    understand that?

2                    THE DEFENDANT:  Yes, Your Honor.

3                    THE COURT:  On the other hand, if you wish, I will

4    listen to your plea.  I'm a United States magistrate judge.

5    This proceeding is being recorded.  A transcript will be made

6    of the proceeding and Judge Mauskopf will review it to decide

7    whether to accept your plea.  She'll also review it in

8    connection with your sentence.  Do you understand that?

9                    THE DEFENDANT:  Yes, Your Honor.

10                   THE COURT:  Understanding what I've just said, do

11   you still wish to give up your right to have Judge Mauskopf

12   listen to your plea and are you prepared to proceed before me

13   at this time?

14                   THE DEFENDANT:  Yes, Your Honor.

15                   THE COURT:  I'm going to ask you to keep your voice

16   up, please.

17                   Are you making this decision voluntarily and of

18   your own free will?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  Have any promises or threats been made

21   to you to get you to agree to have me hear your plea?

22                   THE DEFENDANT:  No.

23                   THE COURT:  I find that the defendant's consent is

24   knowing, intelligent, and voluntary.

25                   Mr. Speight, before accepting your guilty plea

1      there are a number of questions that I have to ask you to

2      make sure that it's a valid plea.  If you don't understand

3      any of my questions, please say so and I'll reword the

4      question.  All right?

5                  THE DEFENDANT:  Yes.

6                  THE COURT:  I'm now going to ask my law clerk to

7      administer the oath.

8            (The defendant is sworn.)

9                  THE CLERK:  Please state your full name and spell

10     your last name for the record.

11                 THE DEFENDANT:  Full name is Cecil Franklin

12     Speight, S-P-E-I-G-H-T.

13                 THE COURT:  Mr. Speight, you should understand that

14     having been sworn, your answers to my questions will be

15     subject to the penalties of perjury if you do not answer

16     truthfully.  Do you understand that?

17                 THE DEFENDANT:  Yes.

18                 THE COURT:  Mr. Speight, how old are you?

19                 THE DEFENDANT:  53.

20                 THE COURT:  How far did you go in school?

21                 THE DEFENDANT:  Graduate school.

22                 THE COURT:  You have a -- a graduate degree?

23                 THE DEFENDANT:  Masters.

24                 THE COURT:  In what area?

25                 THE DEFENDANT:  Masters in religious studies and --

6

1      and business.

2              THE COURT:  Are you now or have you recently been

3      under the care of a doctor or psychiatrist?

4              THE DEFENDANT:  No.

5              THE COURT:  In the past 24 hours, have you taken

6      any drugs, narcotics, medicine, or pills, or drunk any

7      alcoholic beverages?

8              THE DEFENDANT:  No.

9              THE COURT:  And have you ever been hospitalized or

10     treated for substance abuse or for any mental or emotional

11     problem?

12             THE DEFENDANT:  No.

13             THE COURT:  Is your mind clear now?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand what's going on here

16     now?

17             THE DEFENDANT:  Yes.

18             THE COURT:  The United States Attorney's Office is

19     prepared to file what's known as a criminal information, and

20     I understand that you're prepared to plead guilty to that

21     information.  The information contains one count or charge.

22            Specifically, it alleges a conspiracy -- that you

23     engaged or participated in a conspiracy to commit mail fraud

24     and securities fraud during the period between January of

25     2012 and May of 2013.

1           The information also includes a criminal forfeiture

2      allegation.  Have you seen the information?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  Have you discussed it with your

5      attorney?

6                THE DEFENDANT:  Yes.

7                THE COURT:  Do you understand the nature of the

8      charges?

9                THE DEFENDANT:  Yes, I do.

10               THE COURT:  The charge, I should say.

11          In a moment I'll explain to you in more detail what

12     the government would be required to prove in order to

13     establish your guilt of the -- the charge in the information.

14          For now, I want to address another matter and that

15     has to do with your agreement to waive indictment in this

16     case.  You understand that the conspiracy charged in the

17     information is a felony charge?  Do you understand that?

18               THE DEFENDANT:  Yes.

19               THE COURT:  I have before me a waiver of indictment

20     form.  Is that your signature on the defendant's signature

21     line?

22               THE DEFENDANT:  Yes, Your Honor.

23               THE COURT:  Have you read this document and

24     discussed it with Mr. Franklin?

25               THE DEFENDANT:  Yes.

8

1          THE COURT:  Do you understand what you're waiving

2    or giving up by waiving indictment?

3          THE DEFENDANT:  Yes.

4          THE COURT:  I want to make sure that you do

5    understand what it is you're giving up.

6          You have a constitutional right to be charged by an

7    indictment of a grand jury.  You can, however, waive or give

8    up that right and consent to being charged by what's known as

9    an information of the United States Attorney.  Rather than an

10   indictment, the felony charge that I just summarized for you

11   has been brought by the United States Attorney by filing an

12   information.

13         Unless you waive indictment, you may not be charged

14   with a felony unless a grand jury finds by returning an

15   indictment that there's probable cause to believe that a

16   crime has been committed and that you committed it.  Do you

17   understand that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  If you do not waive indictment, the

20   government could present this case to the grand jury and

21   request that the grand jury indict you.

22         A grand jury is composed of at least 16 and not

23   more than 23 persons, and at least 12 grand jurors must find

24   that there's probable cause to believe that you committed the

25   crime with which you are charged before you may be indicted.

1    Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  If this case were presented to a grand

4    jury, the grand jury might or might not indict you.  If you

5    waive indictment by the grand jury, the case will proceed

6    against you on the basis of the U.S. Attorney's information

7    just as though you had been indicted.  Do you understand

8    that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Have you discussed with your attorney

11   the matter of waiving your right to indictment by the grand

12   jury?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you understand your right to

15   indictment by a grand jury?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Have any threats or promises been made

18   to you to get you to agree to waive indictment?

19             THE DEFENDANT:  No.

20             THE COURT:  Understanding what I've just said, do

21   you still wish to waive your right to indictment by a grand

22   jury?

23             THE DEFENDANT:  Yes.

24             THE COURT:  I find that Mr. Speight's waiver is

25   knowing, intelligent, and voluntary.  Therefore, the

10

1      indictment -- the information will be -- will be filed.

2              Mr. Franklin, have you discussed the matter of

3      pleading guilty with your client?

4              MR. FRANKLIN:  Yes, I have, Your Honor.

5              THE COURT:  In your view, does he understand the

6      rights he'll be waiving by pleading guilty?

7              MR. FRANKLIN:  Yes, he does.

8              THE COURT:  Is he capable of understanding the

9      nature of these proceedings?

10             MR. FRANKLIN:  Yes.

11             THE COURT:  Do you have any doubt as to his

12     competence to plead at this time?

13             MR. FRANKLIN:  I have no doubt as to that.

14             THE COURT:  Have you advised him of the maximum

15     sentence and fine that can be imposed and have you discussed

16     with him the effect of the sentencing guidelines?

17             MR. FRANKLIN:  Yes, I have.

18             THE COURT:  Mr. Speight, have you discussed your

19     case with Mr. Franklin and are you satisfied to have him

20     represent you?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  And I understand that you have retained

23     Mr. Franklin as your attorney.  You should understand that if

24     you cannot afford to continue to retain counsel, the Court

25     will appoint an attorney to represent you at no cost to you.

11

1    Do you understand that?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  You indicated a moment ago that you've

4    seen a copy of the information.  Have you consulted with Mr.

5    Franklin about the information?

6                    THE DEFENDANT:  Yes, Your Honor.

7                    THE COURT:  As I indicated earlier, the one charge

8    in the indictment alleges that between approximately January

9    of 2012 and May of 2013, you knowingly and intentionally

10   conspired to commit mail fraud and securities fraud.

11                   In order to prove you guilty of that offense, the

12   government would have to prove the following beyond

13   reasonable doubt.

14                   First, that at some time during the approximate

15   time period charged in the information, two or more persons

16   in some manner or -- or way agreed to accomplish a common and

17   unlawful plan to commit mail fraud and/or securities fraud as

18   charged in the indictment.

19                   Second, that the government would have to prove

20   that you knew the unlawful purpose of the plan and -- and

21   willfully joined it.

22                   And third, that you or some co-conspirator

23   committed an overt act to accomplish the object of the

24   conspiracy.  That is, that an affirmative step was taken in

25   order to accomplish the conspiracy's objective or objectives.

1          Now, I want to take a moment to explain to you the

2     two -- the -- the two objectives of the conspiracy, and that

3     is mail fraud and securities fraud, and what the government's

4     obligation would be in connection with -- with proving those

5     offenses as the conspiratorial objective.

6          First, with respect to securities fraud, the

7     government would have to prove that you and your co-

8     conspirators agreed to use a device or scheme to defraud

9     someone, or made an untrue statement of a material fact, or

10    failed to disclose a material fact that resulted in making

11    the statements misleading, or engaged in any act, practice,

12    or course of business that would operate as a fraud or deceit

13    upon any person.

14         Second, the government would have to prove that the

15    acts or failure to disclose were to be made in connection

16    with the sale of a security.

17         In this case, the information charges that there

18    were two cons -- two securities involved, Altmark bonds and

19    Adfitech's stock.

20         Third, the government would have to prove that it

21    was contemplated that an instrument or facility of interstate

22    commerce, such as the mails, would be used in connection with

23    these acts or failure to disclose.

24         And finally, that you and your co-conspirators

25    acted for the purpose of defrauding buyers of those

1      securities.

2                  Do you understand the -- the object of securities

3      fraud?

4                  THE DEFENDANT:  Yes.

5                  THE COURT:  An alternative object that's pleaded in

6      the information is mail fraud.

7                  In order to prove that mail fraud was the object of

8      the conspiracy or agreement, the government would have to

9      prove the following beyond a reasonable doubt.

10                  First, that there was a scheme to defraud or to

11      obtain money or property by means of false or fraudulent

12      pretenses.

13                  Second, that you knowingly and willfully

14      participated in this scheme with the intent to defraud or to

15      obtain money or property by means of false or fraudulent

16      pretenses.

17                  And third, that it was contemplated that the -- the

18      use of the United States mails or commercial copier would be

19      -- commercial carrier would be used in furtherance of the --

20      that scheme.

21                  Do you understand the conspiratorial objective of

22      mail fraud?

23                  THE DEFENDANT:  Yes.

24                  THE COURT:  I now want to talk with you about the

25      rights that you'll be giving up by pleading guilty.  But the

14

1    first and most important thing that you have to understand is

2    that you have an absolute right to plead not guilty.  Do you

3    understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  If you plead not guilty, then under the

6    constitution and laws of the United States you're entitled to

7    a speedy and public trial by jury with the assistance of

8    counsel on the charge contained in the information against

9    you.  Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  You have the right to be represented by

12   an attorney and, as I said earlier, if necessary, to have the

13   Court appoint an attorney to represent you not only at trial

14   but at every other stage of the proceeding.  Do you

15   understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  At the trial, you would be presumed to

18   be innocent and the government would have to overcome that

19   presumption and prove you guilty by competent evidence and

20   beyond a reasonable doubt.  You would not have to prove that

21   you were innocent.

22             And if the government failed to prove you guilty

23   beyond a reasonable doubt, the jury would have the duty to

24   find you not guilty.  Do you understand that?

25             THE DEFENDANT:  Yes.

15

1         THE COURT:  In the course of the trial, the

2    witnesses for the government would have to come to court and

3    testify in your presence and your attorney would have the

4    right to cross-examine the witnesses for the government, to

5    object to evidence offered by the government, to offer

6    evidence on your behalf, and to compel the attendance of

7    witnesses.  Do you understand that?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  At a trial, while you would have the

10   right to testify if you chose to do so, you could not be

11   required to testify.

12        Under the Constitution of the United States, you

13   cannot be compelled to incriminate yourself.  If you decided

14   not to testify, the Court would, at your lawyer's request,

15   instruct the jurors so that they could not hold that against

16   you.  Do you understand that?

17        THE DEFENDANT:  Yes.

18        THE COURT:  If you plead guilty and the Court

19   accepts your plea, you'll be giving up your constitutional

20   right to a trial and the other rights that I've just

21   discussed.  There'll be no further trial of any kind and no

22   right of appeal from the judgment of guilty.  The Court will

23   simply enter a judgment of guilty on the basis of your guilty

24   plea.  Do you understand that?

25        THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  If you plead guilty, I'll have to ask

2     you questions about what you did in order to satisfy myself

3     and Judge Mauskopf that you are, in fact, guilty of the

4     charge to which you seek to plead guilty and you'll have to

5     answer my questions and admit your guilt.

6          In that way, you'll be giving up your right not to

7     incriminate yourself.  Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Are you willing to give up your right

10    to a trial and the other rights that I've just discussed?

11         THE DEFENDANT:  Yes.

12         THE COURT:  I have before me a plea agreement

13    that's been marked Court Exhibit 1.  Turning to the last page

14    of that document, is that your signature on the defendant's

15    signature line?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Have you read this entire document and

18    discussed it with your attorney?

19         THE DEFENDANT:  Yes, I have.

20         THE COURT:  Do you understand all the terms and

21    conditions of this agreement?

22         THE DEFENDANT:  Yes, I do.

23         THE COURT:  Does this document fully and accurately

24    reflect your understanding of the agreement you've reached

25    with the government concerning your guilty plea?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Other than the promises contained in

3     this document, has anyone made any promise that has caused

4     you to plead guilty?

5          THE DEFENDANT:  No.

6          THE COURT:  Has anyone made any promise to you as

7     to what your sentence will be?

8          THE DEFENDANT:  No.

9          THE COURT:  I now want to talk with you about the

10    sentencing scheme that's applicable here.  The statute that

11    you're accused of violating carries a prison term of up to

12    five years.  Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  In addition to a prison term, the

15    sentencing court can also impose a supervised release term of

16    up to three years.  The supervised release term would follow

17    any term of imprisonment.

18              And if you violated a condition of supervised

19    release, you could then be sent back to prison for up to an

20    additional two years regardless of how much time you may

21    already have spent in prison or how much time you already

22    served on post-release supervision.  Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  In addition to a prison term and

25    supervised release term, the sentencing court can also impose

1    a fine of up to $250,000 or twice the gross gain or loss,

2    whichever is greater.  Do you understand that?

3               THE DEFENDANT:  Yes.

4               THE COURT:  And I assume from the papers that I've

5    seen in this case that the loss here is $3.3 million; is that

6    correct?

7               THE DEFENDANT:  Yes, Your Honor.

8               THE COURT:  And I -- and I believe that's not

9    disputed.  Am I correct, Mr. Franklin?

10              MR. FRANKLIN:  That is correct, Your Honor.

11              THE COURT:  So, it -- it will be -- if there were

12   an issue as to the amount of the -- the loss, it would be up

13   to Judge Mauskopf to resolve that.

14              But assuming, as I'm told, there's no dispute, if

15   the loss is $3.3 million the fine could be up to twice that

16   amount, or $6.6 million.  Do you understand that, Mr.

17   Speight?

18              THE DEFENDANT:  Yes.

19              THE COURT:  In addition, the sentencing court can

20   also order that you pay restitution to the victim or victims

21   of your offense and again the amount is undisputed and that

22   is $3.3 million. Do you understand that?

23              THE DEFENDANT:  Yes.

24              THE COURT:  And I want to make clear to you that a

25   fine and restitution are two separate elements of -- of a

1    sentence.  The sentencing court could -- could, and according

2    to the plea agreement, will require that you pay restitution

3    in the amount of $3.3 million and can also order you to pay a

4    fine of up to two times that amount since it constitutes

5    twice the -- the loss.  Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And the -- and the reason why the

8    sentencing court can do that is a fine and restitution have

9    different purposes.

10             A fine is a penalty that's payable over to the

11   United States Treasury, whereas restitution is a remedy to

12   the victim or victims of a defendant's offense.

13             And even though the fine could be determined by the

14   amount of the loss in this case, nevertheless, you could be

15   required to pay both, which would be a total amount of almost

16   $10,000,000.  Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And as I understand it by this plea

19   agreement, you, in fact, have agreed to a forfeiture money

20   judgment in the amount of $3.3 million.  Do you understand

21   that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And you've reviewed the plea agreement

24   that --  that contains detailed information about the

25   forfeiture money judgment and what you're agreeing to.  Do

20

1    you understand that?

2         THE DEFENDANT:  Yes.

3         THE COURT:  The sentencing court will also impose a

4    mandatory $100 special assessment.  Do you understand that?

5         THE DEFENDANT:  Yes.

6         THE COURT:  I now want to talk with you about the

7    sentencing guidelines.

8              Under the Sentencing Reform Act of 1984, the United

9    States Sentencing Commission has issued guidelines for judges

10   to consider in determining the sentence in a criminal case.

11             In determining the sentence, the Court is obligated

12   to calculate the applicable sentencing guideline range and to

13   consider that range, possible departures under the

14   guidelines, and other sentencing factors including those

15   specified by statute.  Do you understand that?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Have you and Mr. Franklin talked about

18   how the guidelines might apply to your case?

19        THE DEFENDANT:  Yes.

20        THE COURT:  You should understand that Judge

21   Mauskopf will not be able to do the guideline calculation in

22   your case until after the Probation Department has prepared a

23   pre-sentence report and you and your attorney have had an

24   opportunity to read it and to challenge the facts reported by

25   the probation officer.  Do you understand that?

1           THE DEFENDANT:  Yes.

2           THE COURT:  You should also understand that after

3     it's been determined what guideline applies to a case, the

4     Judge has the authority to impose a sentence that is more

5     severe or less severe than the sentence called for by the

6     guidelines depending on what is a reasonable sentence.  Do

7     you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  I'm now going to ask the attorneys to

10    give their best estimate of what the guideline range of

11    imprisonment is likely to be, but I want you to keep in mind

12    that these are simply attorneys' estimates and they are not

13    binding upon Judge Mauskopf, even if, as I believe is the

14    case here, both the prosecutor and your lawyer happen to be

15    in agreement.  Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And, Mr. Dennehy, I take it the

18    government's calculations are set forth in paragraph two of

19    the agreement?

20          MR. DENNEHY:  They are, Your Honor.  And in

21    reviewing that, it occurs to me that in the second half of

22    that paragraph we should amend the date for the third point

23    of acceptance to reflect today's date of July 23rd and we'll

24    initial that -- that change.  And --

25          THE COURT:  All right.

22

1          MR. DENNEHY:  -- given that --

2          THE COURT:  That's on page three.

3          MR. DENNEHY:  Correct.  And given that third point

4    offer of acceptance, the government would have an adjusted

5    estimated offense level of 26.  But given that the statutory

6    maximum sentence for this case is five years, it would be a

7    maximum advisory guidelines range of 60 months.

8          THE COURT:  And again -- and -- and Mr. Franklin, I

9    see that the plea agreement indicates that the defendant

10   stipulates to the -- to that calculation, correct?

11         MR. FRANKLIN:  That is correct, Your Honor.  And

12   also for the record, we'll stipulate to the change in the

13   fourth line on page three that it -- rather than read July

14   18th, 2014, read today's date, July 23rd, 2014.

15         THE COURT:  All right.  And you've done your own

16   calculation and it's based on that that you're -- you're

17   stipulating to the government's calculations.

18         MR. FRANKLIN:  That is correct.  We are in

19   agreement.  We have done independent calculations.  We've

20   come up with the same numbers.

21         THE COURT:  All right.  Mr. Speight, I want to

22   point out a particular provision of this agreement.

23   Paragraph four provides in substance and in part that you

24   will not file an appeal or otherwise challenge your

25   conviction or sentence in the event the Court imposes a term

1       of imprisonment of 60 months or below.

2               Now, 60 months is the -- the statutory maximum

3       rate.  Under this agreement, you and your lawyer are free to

4       argue before your sentence that you should not be sent to

5       prison for as long as 60 months.

6               For example, even though the guidelines calculation

7       exceeds the -- the statutory maximum, your lawyer and you are

8       free to argue under this agreement that you should be given a

9       departure that would be less than the -- the guideline range

10      and -- and less than the statutory maximum.

11              However, once Judge Mauskopf sentences you, as long

12      as she stays within the stat -- statutory maximum of 60

13      months, that is the end of the matter.  You've agreed that in

14      that event you will not file an appeal or otherwise challenge

15      your conviction or sentence.  Do you understand that?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Do you have any questions you'd like to

18      ask me about the charge, your rights, or anything else

19      relating to this matter?

20              THE DEFENDANT:  No, Your Honor.  It was very well

21      explained.

22              THE COURT:  And you should understand that parole

23      has been abolished and that you will not be sentenced -- and

24      that if you're sentenced to prison you will not be released

25      on parole.  Do you understand that?

24

```
 1                    THE DEFENDANT:  Yes.
 2                    THE COURT:  Are you ready to plead?
 3                    THE DEFENDANT:  Yes.
 4                    THE COURT:  Mr. Franklin, do you know any reason
 5       why Mr. Speight should not plead guilty?
 6                    MR. FRANKLIN:  I do not, Your Honor.
 7                    THE COURT:  Are you aware of any viable legal
 8       offense to the charge?
 9                    MR. FRANKLIN:  I am not.
10                    THE COURT:  Mr. Speight, what is your plea to the
11       one count in the information; guilty or not guilty?
12                    THE DEFENDANT:  Guilty.
13                    THE COURT:  Are you making this plea of guilty
14       voluntarily and of your own free will?
15                    THE DEFENDANT:  Yes, Your Honor.
16                    THE COURT:  Has anyone threatened or forced you to
17       plead guilty?
18                    THE DEFENDANT:  No.
19                    THE COURT:  Other than the agreement with the
20       government that's been marked Court Exhibit 1, has anyone
21       made any promise that has caused you to plead guilty?
22                    THE DEFENDANT:  No.
23                    THE COURT:  Has anyone made any promise to you as
24       to what your sentence will be?
25                    THE DEFENDANT:  No.
```

1    THE COURT:  Again, Count 1 charges that between

2    approximately January of 2012 and May of 2013 you and others

3    knowingly and willfully conspired or agreed to commit mail

4    fraud and securities fraud involving the Adfitech stock and

5    Altmark bonds.  Did you in fact partici -- knowingly

6    participate in such a conspiracy?

7    THE DEFENDANT:  Yes.

8    THE COURT:  Would you tell me in your own words

9    what you did that makes you guilty of that offense?

10   THE DEFENDANT:  Yes, Your Honor.  Through the use

11   of fraudulent websites, Internet advertising, and cold

12   callers, I conspired with others to sell fictitious Altmark

13   and Adfitech securities to members of the investing public.

14   The investors/victims were induced to invest

15   through false promises of the value and rate of return on the

16   purported securities.  In fact, the securities were -- were

17   offered by myself and my co-conspirators were worthless.

18   Once a victim or investor was induced to invest in

19   a particular security, they were instructed to wire their

20   investment monies to one of the attorney accounts maintained

21   by co-conspirator attorneys.  Once funds were wired by victim

22   investors into the attorney accounts, the funds were almost

23   immediately transferred to accounts controlled by myself.

24   Once I received the victims' money, fictitious

25   stock and/or bond certificates were mailed to victim

26

1    investors by myself through international stock transfer.

2    The purported stock and/or bond certificates were signed by

3    myself as a director and/or company officer despite the fact

4    that I had no official affiliation with the companies

5    purportedly issuing the securities.

6              Between January, 2012 and May, 2013, International

7    Stock Transfer received more than 3.3 million dollars in

8    investor monies from the sale of fraudulent securities to at

9    least 72 victims.

10             At least -- at least 11 victims were resident of

11   the United -- residents of the United States, including at

12   loose -- at least two investors who reside within the Eastern

13   District of New York and another residing in the Southern

14   District of New York.  And stock certificates were mailed to

15   those investors in the Eastern District of New York.

16             THE COURT:  Mr. Dennehy, is there any further

17   inquiry you'd like me to make of the defendant?

18             MR. DENNEHY:  No, Your Honor.  I think his

19   allocution has incorporated the overt acts as well as the

20   statutory language of Count 1.

21             THE COURT:  Based on the information given to me, I

22   find that Mr. Speight is acting voluntarily, that he fully

23   understands his rights and the consequences of his plea, and

24   that there is a factual basis for the plea.

25             I, therefore, recommend acceptance of the plea of

27

1    guilty to the one count in the information.

2            The Probation Department will be preparing a pre-

3    sentence report and will also be setting the date for

4    sentence before Judge Mauskopf.  Mr. Speight, I urge you to

5    cooperate with the probation officer.

6            This is the defendant's initial appearance.  There

7    is an agreed upon bond.  I have reviewed the pre-sentence

8    report and I am satisfied with the proposed conditions.  Mr.

9    Speight has not yet signed the bond.

10           Mr. Speight, have you reviewed it?

11           THE DEFENDANT:  Yes.

12           THE COURT:  All right.  I'm going to have it handed

13   to you so that you can sign it.

14           MR. DENNEHY:  Your Honor, and I would just note

15   that the defendant had previously surrendered his passport to

16   the FBI, but he is directed not to apply for any new one.

17           THE COURT:  All right.  Well, I'm going to go

18   through all the --

19           MR. DENNEHY:  Oh.

20           THE COURT:  -- conditions with him.

21           MR. DENNEHY:  Thank you.

22        (Pause.)

23           THE COURT:  All right.  Mr. Speight, I see you've

24   now signed the bond.  I want to explain what your obligations

25   are and also what will happen to you if you violate any of

1     the conditions of your release.

2            This is a $100,000 personal recognizance bond.  In

3     addition to the usual requirements that you appear in court

4     as directed and not commit any crimes, there are a series of

5     additional or special conditions.

6            First of all, your travel is restricted to the

7     following states:  Florida, New York, and California.  You

8     are to remain within those states.

9            Obviously, you can -- if you're traveling to

10     California you're -- you can travel across the United States,

11     but you're not authorized to make any detours on the way.  Do

12     you understand that?

13            THE DEFENDANT:  Yes.

14            THE COURT:  And I see that -- I see it provides

15     that his travel is restricted to the three states unless pre-

16     approved by Pretrial Services, correct?

17            MR. FRANKLIN:  Yes, Your Honor.

18            PRETRIAL SERVICES OFFICER:  Yes.

19            THE COURT:  All right.  So, you're not requesting

20     that he get court approval for -- all right.

21            And since the Pretrial Services officer is in

22     agreement, I will accept that.

23            But, Mr. Speight, if you have any reason to travel

24     outside those three states, you should speak with Pretrial

25     Services to get their approval.

1          If you travel outside those -- those three states

2     without that approval, that is a violation of your bond.  Do

3     you understand that?

4               THE DEFENDANT:  Yes, Your Honor.

5               THE COURT:  I understand you've already surrendered

6     your passport to the FBI and is the -- the FBI is going to

7     hold onto -- to the passport?

8               MR. DENNEHY:  Yes, Your Honor.

9               THE COURT:  And you're not to apply for a passport

10    while released on bail.  Do you understand that, Mr. Speight?

11              THE DEFENDANT:  Yes.

12              THE COURT:  I'm placing you under the supervision

13    of Pretrial Services.  I understand it's contemplated that

14    the supervision will be out of the West Palm Beach Pretrial

15    Services office.  You are to report as directed in person to

16    Pretrial Services.  Is that what's being requested -- in

17    person?

18              MR. FRANKLIN:  Yes, Your Honor.

19              THE COURT:  You're -- Mr. Speight, you're also

20    subject to random visits by a Pretrial Services officer at

21    your home, and if you're working, at your place of work.

22              And in addition, you're to undergo random drug

23    testing, evaluation, and treatment, as well as random

24    testing, evaluation, and treatment for alcoholism as directed

25    by Pretrial Services.  Do you understand that?

30

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  Although you're not being asked to put

3    up any cash or property to secure your release by signing

4    this bond, you're agreeing that if you violate any of your

5    bail conditions and if bail is forfeited, you will then owe

6    the government up to the full amount of the bond, or

7    $100,000.  Do you understand that?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  And if that happens, the government

10   could go after any savings or assets that you have in order

11   to collect that money.  The government could also attempt to

12   collect that money over time.

13           For example, if you are working, your wages could

14   be garnished, or if you have income, the government could

15   obtain an order of income execution, which means that a

16   portion of your -- your income would be paid over to the

17   government until the full $100,000 was collected.  Do you

18   understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  And -- and that could -- would be on

21   top of any -- any fine and restitution that you might owe.

22   Do you understand that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  In addition to the -- this financial --

25   these financial consequences to you, if you fail to come to

31

1   court as directed, a warrant will be issued for your arrest

2   and you may then be held without bail until your -- until

3   your sentence.  Do you understand that?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Failure to appear may result in charges

6   of bail jumping.  Bail jumping is a felony offense.  It's

7   separate from the -- the conspiracy charge to which you're

8   seeking plea -- seek -- to which you're pleading guilty.

9            If you were convicted of bail jumping as well as

10   the -- the conspiracy charge, you could receive consecutive

11   prison terms.  Do you understand that?

12            THE DEFENDANT:  Yes.

13            THE COURT:  You're also subject to increased

14   punishment if you commit a crime while released on bail.  And

15   if you threaten a witness or attempt to influence the

16   testimony of a witness, you may be subjected to punishment

17   for that as well.  Do you understand that?

18            THE DEFENDANT:  Yes.

19            THE COURT:  In short, you should keep your attorney

20   aware of where you can be reached, appear in court as

21   directed, do not commit any crimes, avoid any attempt to

22   influence the testimony of anyone you think may be a witness

23   against you, and comply with all the additional conditions of

24   bail, which I've already summarized for you.  Are you

25   prepared to do all of that?

32

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  The bond is approved.  Is

3     there anything further?

4          MR. DENNEHY:  No, Your Honor.  Thank you.

5          THE COURT:  And thank you all very much.

6          MR. FRANKLIN:  Thank you, Your Honor.

7          MR. DENNEHY:  Thank you.

8        (Proceedings concluded at 4:52 p.m.)

9      I, CHRISTINE FIORE, court-approved transcriber and

10    certified electronic reporter and transcriber, certify that

11    the foregoing is a correct transcript from the official

12    electronic sound recording of the proceedings in the above-

13    entitled matter.

14

15          *Christine Fiore*

16    _____          March 9, 2015

17       Christine Fiore, CERT

18

19

20

21

22

23

24